UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SILICON VALLEY BANK | Case No. 2:20-cv-17813-SRC-CLW |
| Plaintiff, | |
| v. | |
| | **OPINION** |
| RAJESH SAGGI, | |
| Defendants. | |

**CHESLER**, District Judge

This matter comes before the Court on the motion for summary judgment filed by Plaintiff Silicon Valley Bank ("SVB"), pursuant to Federal Rule of Civil Procedure 56. Defendant Rajesh Saggi opposes the motion. The Court has reviewed the papers submitted and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Plaintiff's motion for summary judgment will be granted in part.

**I.    BACKGROUND**[1]

In early 2019, Defendant sought a loan or line of credit with SVB while he attempted to liquidate his interests in two entities: Moblty, Inc. ("Moblty") and True Green Capital ("TGC" and collectively the "Illiquid Assets"). (Saggi Decl. ¶¶ 2, 4.) On July 29, 2019, and following several months of diligence and negotiations, including a March 2019 meeting between Defendant

---

[1] The Court will consider those facts which are undisputed as set forth in Defendant's Response to Plaintiff's Statement of Material Facts Pursuant to Local Civil Rule 56.1 and Fed.R.Civ.P. 56(c) (ECF 21-4) ("SMF I") and Plaintiff's Response to Defendant's Supplemental Statement of Disputed Facts Pursuant to Local Civil Rule 56.1 (ECF 22-6) ("SMF II"), as well as those facts set forth in Defendant's May 24, 2021 declaration (ECF No. 21-1) ("Saggi Decl.").

1

and SVB representatives, the Parties entered into a Securities-Backed Line of Credit and Security Agreement. (Saggi Decl. ¶ 7; SMF I ¶ 4; ECF No. 16-4 (the "Agreement").) Pursuant to the Agreement, SVB provided Defendant a non-revolving line of credit up to $1,035,000 secured by the Illiquid Assets (the "Line of Credit"). (SMF I ¶ 4.)

The Agreement consists of two sections: An initial "Summary of Terms" (Agreement at 1–3) and a more detailed section entitled "Terms and Conditions" (Agreement at 4–14).[2] Relevantly, the Summary of Terms establishes the Line of Credit's "Maturity Date" as January 29, 2020. (Summary of Terms at 2.) The Summary of Terms also includes a statement concerning the "Principal Repayment," which reads: "[Defendant] agrees to use proceeds from the sale of any of [Defendant's] (i) Moblty[] stock or (ii) [TGC] interests to pay down the principal balance of [the Line of Credit]." (Summary of Terms at 2.)[3] The Terms and Conditions, in turn, include several clauses bearing upon the timing by which Defendant was required to repay the Line of Credit and the funds with which Defendant was required to repay it:[4]

> Section 5.1. *Promise to Pay; Demand.* [Defendant] promises to pay [Plaintiff], the total of all [amounts due, including all fees, costs and expenses incurred in

---

[2] Both the Summary of Terms and the Terms and Conditions are found within the Agreement and the Court will refer to them separately throughout the Opinion for ease of reference.

[3] While the Summary of Terms provides an overview of the Agreement, the terms described therein "are explained in further detail in the Terms and Conditions." (Summary of Terms at 2.) The Summary of Terms also disclaims that "[i]f there is a conflict between the terms of this Summary and those of the Terms and Conditions, the terms of the Terms and Conditions will control." (Summary of Terms at 2.)

[4] The Agreement also includes an integration clause, which states that the Agreement:

> [C]ontain[s] the entire understanding of the parties on this subject. No purported amendment or modification of any document, or waiver, discharge or termination of any obligation, shall be enforceable or admissible unless, and only to the extent, expressly set forth in a writing signed by the party against which enforcement or admission is sought. Without limiting the generality of the foregoing, no oral promise or statement, nor any action, inaction, delay, failure to require performance or course of conduct shall operate as, or evidence, an amendment, supplement or waiver or have any other effect on the Agreement.

(Terms and Conditions § 17.7)

connection with the Line of Credit (collectively, "Indebtedness")] immediately ON DEMAND.

. . .

Section 5.4. *Balloon Payment*. All Indebtedness under [the] Agreement, if not already paid in full, is due and payable on the Maturity Date in a single balloon payment. . . . [Plaintiff] may renew or extend the [Line of Credit] in [its] sole discretion. Unless otherwise required by applicable law, [Plaintiff is] under no obligation to refinance the amount due at that time. [Defendant] may be required to make payments out of other assets [he] own[s] or find a lender, which may be [Plaintiff], willing to lend [him] the money.

(Terms and Conditions §§ 5.1, 5.4.) The Agreement is governed by California law. (Terms and Conditions § 17.1.)

In return for the line of credit, Defendant agreed to pay to SVB an upfront fee of $2,587, a success fee equal to $18,112.50, and interest on funds advanced to him pursuant to the Line of Credit at a variable rate of interest. (Summary of Terms at 1–2.) Between August 6 and September 12, 2019, SVB disbursed the maximum amount offered under the Agreement, $1.035 million. (SMF I ¶ 21.) As of January 29, 2020, Defendant had not repaid the amounts advanced to him under the Line of Credit, the accrued but unpaid interest, or the success fee. (SMF I ¶ 27.)[5]

On February 4, 2020, SVB sent Defendant a letter stating that he was in default of his obligations under the Agreement and demanded that he repay his obligations within 15 days of the letter. (SMF I ¶ 28.) Following months of communications between the Parties concerning the Agreement, including discussions of modifying the Agreement, Plaintiff filed this lawsuit on

---

[5] Pursuant to the Agreement, prior to January 29, 2020, Plaintiff debited monthly payments from Defendant's account on the 29th day of each calendar month, in an amount equal to the interest accrued on all outstanding Credit Advances together with any past due amounts and all related charges. (SMF ¶ 10). SVB continued to debit accrued interest on the outstanding Line of Credit on a monthly basis through April 2020, at which point there were insufficient funds in Defendant's accounts with SVB to cover the interest accruals. (SMF ¶¶ 33, 35.) As of February 28, 2021, Defendant had not repaid the amounts advanced to him under the Line of Credit, the accrued but unpaid interest, or the success fee. (SMF ¶ 44.)

3

December 2, 2020. (SMF I ¶¶ 29–31; 36; 39; 41.) The Complaint pleads one cause of action for breach of contract, seeking the obligations purportedly owed it under the Agreement, including collection costs incurred in Plaintiff's recovery efforts. On February 23, 2021, Magistrate Judge Waldor stayed discovery pending the filing and disposition of the instant motion.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 56(a) sets the standard the Court must apply to the motion for summary judgment. Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)). It is well-established that a factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and material if, under the substantive law, the dispute would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). It may not make credibility determinations or engage in any weighing of the evidence. Anderson, 477 U.S. at 255; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (holding same).

Once the moving party has satisfied its initial burden, the nonmoving party must establish the existence of a genuine issue as to a material fact in order to defeat the motion. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). To create a genuine issue

of material fact, the nonmoving party must come forward with sufficient evidence to allow a jury to find in its favor at trial. Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001), overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs, 134 S. Ct. 773 (2014). The party opposing a motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment"). If the non-movant fails to "properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

### B. Material Facts Purportedly in Dispute

According to Defendant, there are genuine disputes as to material facts concerning key terms to the Agreement—namely, the maturity date and the funds by which Defendant was obligated to repay the loan. The gravamen of Defendant's argument is that, notwithstanding certain terms clearly establishing January 29, 2020 as the date by which Defendant was obligated to repay the Line of Credit, the Agreement memorializes that SVB extended him the Line of Credit for as long as it took him to sell his interest in the Illiquid Assets. This ambiguity renders Plaintiff's motion to dismiss premature, according to Defendant.[6] Furthermore, Defendant contends that there are disputes of material fact with respect to his affirmative defenses.

---

[6] Under California law, a cause of action for breach of contract requires proof of the following elements: (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach and (4) resulting damages to the plaintiff. Armstrong Petroleum Corp. v. Tri–Valley Oil & Gas. Co., 116 Cal. App. 4th 1375, 1391, fn. 6 (2004) (stating elements).

5

> i. <u>There exists no genuine dispute of material facts concerning the Agreement's purportedly ambiguous terms.</u>

When a dispute arises over the meaning of language in a contract, the first question to be decided is "whether the language is 'reasonably susceptible' to the interpretation urged by the party." <u>People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.</u>, 107 Cal. App. 4th 516, 524 (2003); <u>see also</u> <u>Maples v. SolarWinds, Inc.</u>, 2014 WL 2860848, *5 (N.D. Cal. 2014) (internal quotation marks omitted) (A contract is ambiguous when it is "capable of two or more constructions, both of which are reasonable."). Extrinsic evidence is admissible if, and only if, the "offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible," <u>Dore v. Arnold Worldwide, Inc.</u>, 39 Cal. 4th 384, 391 (2006).

Defendant refers the Court to the statement in the Agreement's Summary of Terms, entitled "Principal Repayment," which asserts that Defendant "agrees to use proceeds from the sale of any of [Defendant's] (i) Moblty[] stock or (ii) [TGC] interests to pay down the principal balance of this Credit Line." Defendant claims that, his statement memorializes the Parties' understanding that repayment of the loan's principal was conditioned on Defendant's liquidation of his interest in Moblty or TGC. At the least, Defendant argues, this clause establishes ambiguity "about when SVB can collect the principal amount of the line of credit." (ECF No. 20 at 10.)

Defendant in effect asks the Court to interpret the Agreement to demand repayment of the loan <u>exclusively</u> with the proceeds of any potential stock sale. This interpretation is unreasonable. Nowhere in the Agreement—including the Summary of Terms—is it <u>required</u> that Defendant pay the principal with funds generated from the sale of the Illiquid Assets. Far from being the natural reading of the Agreement, Defendant asks us to rewrite its terms to achieve his preferred interpretation.

6

The unreasonableness of Defendant's proposed interpretation is obvious when considered with the Agreement as whole. In addition to the statement regarding the principal repayment, the Summary of Terms states that repayment of the Line of Credit must be made "ON DEMAND," and the Line of Credit had a maturity date of January 29, 2020. And, Defendant conspicuously ignores the Summary of Terms' disclaimer that its terms "are explained in further detail in the Terms and Conditions," and that "[i]f there is a conflict between the terms of this Summary and those of the Terms and Conditions, the terms of the Terms and Conditions will control." The Terms and Conditions, in turn, make it abundantly clear that Defendant "may be required to make payment out of other assets [he] own[s] or find a lender … willing to lend [him] the money" to repay the loan. (Terms and Conditions § 5.4.) Interpreting the Agreement in the manner that Defendant encourages would create a contradiction in the terms where one does not otherwise exist. Furthermore, Defendant's proffered interpretation would render several of the Agreement's terms superfluous: There would be no need to identify a date certain for a "maturity date" if the loan would only be repaid upon the contingency that he sold his stock. Similarly, Defendant's reading would neutralize the Agreement's explanation that Plaintiff retained the right to call in the loan sooner than January 29, 2020 and was "under no obligation to refinance" the loan as of the defined maturity date. (Terms and Conditions § 5.4.)

Because the language of the Agreement is "clear and explicit and does not lead to absurd results," the Court "ascertain[s] intent from the written terms and go[es] no further." People ex rel. Lockyer, 107 Cal. App. 4th at 524 (quoting Shaw v. Regents of University of California, 58 Cal. App. 4th 44, 53 (1997)). The Agreement does not condition Defendant's repayment of the Indebtedness on the successful sale of Defendant's interest in Moblty or TGC, and Defendant's failure to fulfill his obligations by January 29, 2020 constitutes a breach of the Agreement.

Accordingly, Plaintiff has established a prima facie case showing of entitlement to judgment as a matter of law.

      ii.    <u>There exists no genuine dispute of material facts concerning Defendant's fraudulent inducement defense.</u>[7]

Defendant contends that there remain disputed issues of material facts concerning his affirmative defenses, including a dispute over alleged misrepresentations and promises that SVB made relating to the Agreement. According to Defendant, he has established by his declaration a dispute which, if the facts are drawn sufficiently in his favor, would result in a successful defense of fraudulent inducement.[8]

Defendant's proffered evidence largely fails to support his claim that SVB made knowingly untrue representations. According to Defendant, Plaintiff's employees said that SVB would "<u>work with [him]</u> till the sale of your illiquid assets takes place," (Saggi Dec. ¶10), and "<u>work</u>" with him in a "worse case scenario" that the sale of assets took several years, (Saggi Dec. ¶12 (emphasis added)). And, when Saggi raised his concerns that his assets may not sell as quickly as he hoped, SVB employees "assured [him] many times that [it] would <u>work with [him]</u>" to provide him "with flexibility and extension [sic] of the loan if an issue or delay occurred with the sale of TGC." (Saggi Dec., ¶16 (emphasis added).) Such assertions are entirely supported by the Agreement in

---

[7]     While Defendant failed to plead fraudulent inducement in his Answer, "a district court may entertain unpleaded affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." <u>Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.</u>, 762 F.3d 165, 176 (2d Cir. 2014). Finding none, the Court proceeds to consider the defense for purposes of Plaintiff's motion.

[8]     "A fraudulent misrepresentation is one made with the knowledge that it is or may be untrue, and with the intention that the person to whom it is made act in reliance thereon." <u>Wilke v. Coinway, Inc.</u>, 257 Cal. App. 2d 126, 136 (Ct. App. 1967).

8

which the Parties entered: SVB was empowered under the terms of the agreement to "work with" Defendant and extend the maturity date of the loan. It was not, however, obligated to do so.[9]

To the extent Defendant alleges that SVB made representations that could conceivably be untrue, the allegations are far too generalized to satisfy Rule 9(b)'s heightened pleading requirement. For example, Defendant asserts that (i) SVB employees "assured [Defendant] many times that [SVB] would . . . always provide me with . . . extensions of the loan if an issue or delay occurred with the sale of TGC (Saggi Decl. ¶ 16); and (ii) he was "told at the in-person meeting in approximately March 2019 and thereafter that Silicon Valley Bank would never pursue the principal of the loan until TGC sold and I had the money to pay," (Saggi Decl. ¶ 17). These nonparticularized allegations fail to provide either the substance of the statements or the identity of the declarant. In re Catanella & E.F. Hutton & Co., Inc. Sec. Litig., 583 F. Supp. 1388, 1398 (E.D. Pa. 1984) (allegations must state "the time, place, substance of the alleged misrepresentations, as well as the identity of the individual perpetrating the fraud.").[10]

And, even if these allegations could survive Rule 9(b)'s heightened pleading standard, Defendant would be unable to establish a dispute of material facts sufficient to prove that he justifiably relied on the purported misrepresentations. Under California law, reliance on representations conflicting with "the express provisions of the written contract" are "unjustified as a matter of law." Hadland v. NN Inv'rs Ins. Co., 24 Cal. App. 4th 1578, 1589 (1994); see also

---

[9] Defendant makes much ado regarding the contents of the May 31, 2019 letter, which includes language that is identical in substance to the "Principal Repayments" language later found in the Agreement. This letter, which expressly "does not constitute an agreement . . . or create any legal rights . . . or obligations" similarly fails to support Defendant's reading, as it makes it perfectly clear that Plaintiff retained full recourse as to the Line of Credit, in addition to memorializing that the Agreement would include a six-months maturity date. (Saggi Decl. Ex. B.)

[10] These are not allegations for which Defendant requires discovery in order to provide the required level of detail: He participated in these conversations and was present at the March 2019 meeting.

Seeger v. Odell, 18 Cal.2d 409, 415 (1941) (party to contract "may not put faith in representations . . . which are shown by facts within his observation to be so patently and obviously" false); Cohan v. Chapman, Glucksman, Dean, Roeb & Barger, No. B246438, 2014 WL 1813460, at *5 (Cal. Ct. App. May 7, 2014) (reliance on an alleged misrepresentation is not justifiable when readily available information will demonstrate the falsity.). The Agreement is riddled with terms and conditions which contradict any pre-Agreement promise that purportedly required SVB to extend the Line of Credit beyond January 29, 2019. (See Terms and Conditions § 1 ("Lender may, in its sole and absolute discretion, demand full or partial payment of all or a portion of the outstanding balance"); § 5.1 ([Defendant] promises to pay [Plaintiff], the total of all [amounts due, including all fees, costs and expenses incurred in connection with the Line of Credit (collectively, "Indebtedness")] immediately ON DEMAND); § 5.4 ("All Indebtedness under [the] Agreement, if not already paid in full, is due and payable on the Maturity Date in a single balloon payment. . . . We may renew or extend the [Line of Credit] in our sole discretion. Unless otherwise required by applicable law, we are under no obligation to refinance the amount due at that time.").)[11] This conclusion is further supported by the existence of the integration clause within the Agreement which disclaims any prior oral promises or statements.[12]

---

[11] Defendant's claim that he did "not recall reading pages after [his] signature" (Saggi Decl. 26) is of no moment. Hadland, 24 Cal. App. 4th at 1589 ("[H]aving failed to read the [Agreement] and having accepted it without objection, [Appellant] cannot be heard to complain it was not what [she] expected. [Her] reliance on representations about what [she was] getting … was unjustified as a matter of law."). Furthermore, Defendant does not contest that he read the Summary of Terms, which prominently states that repayment is due "ON DEMAND" and that the maturity date of the loan was set at January 29, 2020. (Summary of Terms at 2.)

[12] Plaintiff asserts, incorrectly, that the existence of a fully integrated agreement bars Defendant's claim that he was induced to enter into the Agreement by extracontractual misrepresentations. See Cal. Civ. Proc. Code § 1856(g); see also Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Assn., 55 Cal. 4th 1169, 291 P.3d 316 (2013) ("The parol evidence rule may not be used as a shield to prevent the proof of fraud, even if the evidence shows a promise directly at variance with the promise of the writing."). Still, while an integration clause may not preclude a claim for fraudulent inducement, "certainly the Court can take such a clause's existence into account in

The agreement unambiguously renounces any obligation on the part of SVB that it would "never pursue the principal of the loan until TGC sold and [Defendant] had the money to pay." (Saggi Decl. ¶ 17.) Therefore, any reliance on such representations is "unjustified as a matter of law," Hadland, 24 Cal. App. 4th at 1589, and there exists no genuine dispute of material fact concerning this defense.

      iii.    <u>There exists no genuine dispute of material facts concerning Defendant's promissory estoppel defense.</u>

Because reasonable reliance is an element of any promissory estoppel defense,[13] Defendant is unable to establish any genuine dispute of material fact for the reasons stated previously. Furthermore, while the parol evidence rule does not, in a dispute over an integrated contract, exclude prior oral statements for the purpose of establishing fraud under California law, the same is not true with respect to the doctrine of estoppel. Casa Herrera, Inc. v. Beydoun, 32 Cal. 4th 336, 346 (2004) ("[T]he doctrine of estoppel … has no force against the parol evidence rule"). Here, the Agreement "contain[s] the entire understanding of the parties" with respect to its subject matter (Terms and Conditions § 17.7). "Under governing California law, such an integrated written agreement presumptively supersedes all prior or contemporaneous oral agreements concerning the subject matter of the written contract." Sanguinetti v. Viewlogic Sys., Inc., 1996 WL 33967, at *16 (N.D. Cal. Jan. 24, 1996). Accordingly, since any purported representation was negated and superseded by the subsequently executed Agreement, it is "legally irrelevant" to establishing a

---

        determining whether an allegation of justifiable reliance . . . [is] viable." Stretch Lab Franchise, LLC v. Stretch Lab, LLC, No. CV 18-7816-GW(SSX), 2019 WL 2279388, at *4 (C.D. Cal. Mar. 4, 2019).

[13]    "[P]romissory estoppel . . . applies when a party makes a promise on which another party justifiably relies to his or her detriment, and on which the promisor should reasonably expect the promise to rely." Drennan v. Star Paving Co., 51 Cal. 2d 409, 333 P.2d 757 (1958).

promissory estoppel defense. J.H. Boyd Enterprises, Inc. v. Boyd, 2019 WL 1055324, at *8 (Cal. Ct. App. Mar. 6, 2019).

   iv. <u>There exists no genuine dispute of material facts concerning Defendant's modification affirmative defense.</u>

Section 1698 of the California Civil Code provides that a written contract can be modified: (i) by a contract in writing; (ii) by an oral agreement to the extent that the oral agreement is executed by the parties; or (iii) by an oral agreement supported by new consideration, "unless the contract otherwise expressly provides." Defendant contends that "there are disputed issues of fact about whether there is an executed oral agreement to modify the Agreement" and asserts in conclusory fashion that "SVB agreed to extend the maturity date of the loan." Defendant otherwise leaves the Court guessing as to who at SVB made this agreement and when it was made.

To the extent that Defendant bases his argument on an oral argument purportedly entered prior to executing the Agreement, it is precluded by virtue of the integrated agreement. Boyd, 2019 WL 1055324 at *7 (an oral agreement "cannot serve as a modification of the [Agreement], but rather is a prior oral agreement that was superseded by the written [Agreement] and precluded by the parol evidence rule.") If Defendant instead bases his assertion on some subsequent modification of the terms of the Agreement, such a claim is utterly unsupported by his declaration. At best, Defendant asserts that, after the Parties entered into the Agreement, SVB "continued to make the representations to me that the principal would not be due until a sale of TGC" (Saggi Decl. ¶ 28) and he "updated" SVB the "status of the sale" (Saggi Decl. ¶ 29). Defendant also asserts that one SVB representative "continued to work with me after the 6 months had expired and assured me, they were working on the extension." (Saggi Decl. ¶ 35.)

None of these allegations can be construed as establishing the <u>existence</u> of an oral agreement, let alone one that satisfies the requirements of Section 1698 of the California Civil

Code. Consequently, Defendant has failed to establish a genuine dispute over material facts with respect to this affirmative defense.

### C. Attorney's Fees

Finally, Plaintiff contends that it is entitled to $452,344.82 in attorneys' fees and other collection costs.[14] The Agreement states that SVB "may hire or pay someone else to help collect [amounts owed under] this Agreement if [he] d[id] not pay," and that he would "pay [SVB] those costs," including, without limitation, "[SVB's] attorneys' fees and [its] legal expenses, whether or not there is a lawsuit" and "any court costs." (SMF ¶ 18; Terms and Conditions §11.1(b).) Furthermore, the Agreement states that "[i]n any action or proceeding between [the Parties] arising out of or relating to the Credit Line, the prevailing party shall be entitled to recover its reasonable attorneys' fees and the other costs and expenses incurred, in addition to other relief to which it may be entitled." (SMF ¶ 18; Terms and Conditions § 17.9.)

In opposition to Plaintiff's application, Defendant contends that counsel for SVB expended an unreasonable amount of hours on (in Plaintiff's words) a "straightforward collection action," and does so at an excessive rate. Defendant also argues that Plaintiff's application should be denied for failure to comply with Local Civil Rule 54.2.

"[S]tate rules concerning the award of attorneys' fees are to be applied in diversity cases." Montgomery Ward & Co. v. Pac. Indem. Co., 557 F.2d 51, 56 (3d Cir. 1977).[15] California law is

---

[14] Plaintiff in its initial application sought $338,912.32 in costs and fees and in its reply seeks an additional $113,432.50 in attorneys' fees incurred since the initial application was filed. (ECF No. 22.)

[15] "[S]tate law governs not only the actual awarding of attorneys' fees but also the method of determining those fees." Dunkin' Donuts Inc., v. Guang Chyi Liu, 2002 WL 31375509, at *2 (E.D.Pa. Oct.17, 2002) (citing Northern Heel Corp. v. Compo Industries, Inc., 851 F.2d 456, 475 (1st Cir.1988)). Accordingly, Local Rule 54.2 is inapplicable to the instant application, and instead California law governs.

13

clear that "the measure and mode of compensation of attorneys and counselors at law is left to the agreement." Cal. Civ. Proc. Code § 1021; see also Havasu Condo's Ltd. v. Sec. Pac. Corp., 5 F.3d 536 (9th Cir. 1993) ("California law recognizes the enforceability of contractual attorneys' fees provisions."); Cal. Civ. Code § 1717(a) ("[W]here the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . then . . . the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs."). For the reasons described throughout the Opinion, Plaintiff is the "party who recovered a greater relief" in this action and thus is entitled to reasonable attorneys' fees and costs as a matter of law. Cal. Civ. Code § 1717(b).

The reasonableness of the fee recovery is determined by looking to a variety of factors: "the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed." Martino v. Denevi, 182 Cal. App. 3d 553, 558 (Ct. App. 1986). "The reasonable hourly rate is that prevailing in the community for similar work." Id. "Although a fee request ordinarily should be documented in great detail, it cannot be said . . . that the absence of time records and billing statements deprive[s] [a] trial court of substantial evidence to support an award." Concepcion v. Amscan Holdings, Inc., 223 Cal. App. 4th 1309, 1324 (2014). Still, the evidence must "allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." Christian Research Institute v. Alnor, 165 Cal. App. 4th 1315, 1320 (2008).

Notwithstanding the relatively relaxed evidentiary standards which California affords in fee applications, the Court cannot conclude that Plaintiff's requested sum is reasonable based on the current record. The data which Plaintiff proffers in support of its billing rates (ECF No. 22-3) does not convince the Court that the rates described are those which "in the community for similar work." While the evidence sets forth the sticker price for white-shoe law firms and their peers, practicing before New York and Delaware courts, it is insufficient to show that those rates must be applied to a "straightforward debt collection" action across the Hudson. Furthermore, while the Court has no doubt that counsel has employed knowledgeable attorneys and support staff in prosecuting this action, the record before it fails to establish the depth of their experience. And, while the fact that SVB actually incurred the fees may bear upon the reasonableness of those fees, it is by no means dispositive on that score. Cf. IMCERA Grp., Inc. v. Liberty Mut. Ins. Co., 50 Cal. Rptr. 2d 583, 604 (Ct. App.), as modified on denial of reh'g (Mar. 29, 1996) ("The trial court could take into account the fact that IMCERA had actually paid the requested fees and that its corporate counsel had approved them. However, these factors should not be given primary weight, lest the trial court give too much deference to the decisions of the party seeking the award.")

Similarly, the Court is unconvinced of the reasonableness of the hours Plaintiff's counsel spent on this action. While the Court recognizes the drawn-out nature of the litigation and the role that Defendant played in the delay, the issues presented here are neither complex nor novel. Without additional detail concerning counsel's activities, the Court is unable to conclude that Plaintiff is entitled to the requested funds. Accordingly, Plaintiff's application for attorneys' fees and costs will be denied without prejudice.

### III. CONCLUSION

For the reasons discussed, Plaintiff SVB's motion for summary judgment will be granted in part. To the extent Plaintiff's motion seeks attorneys' fees and costs, the motion is denied without prejudice.

An appropriate Order will be filed.

s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: June 18, 2021